UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GABRIELA BALCZYRAK-LICHOSYT,
individually and on behalf of all others similarly
situated,

                      Plaintiff,

             - *against* -

SONIYA HOTEL, LLC and HARSHAD MISTRY
A/K/A HARRY MISTRY,

                 Defendants.

16-cv-04386

Hon. Steven I. Locke, USMJ

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

Steven John Moser (SM1133)
Moser Employment Law Firm, P.C.
3 School Street, Suite 207B
Glen Cove, New York 11542
(516) 671-1150
smoser@moseremploymentlaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

LEGAL ISSUE ....................................................................................................................... 1

PROCEDURAL HISTORY ....................................................................................................... 1

FACTS .................................................................................................................................. 2

    Undisputed Facts .............................................................................................................. 2

    Facts On Which There Is No Geniuine Dispute ................................................................. 5

    Lodging & Metrocard ...................................................................................................... 7

ARGUMENT ......................................................................................................................... 8

I.    MR. MISTRY IS LIABLE AS AN EMPLOYER UNDER THE FLSA ......................................... 8

II.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER WAGE NOTICE AND
      WAGE STATEMENT CLAIMS ..................................................................................... 8

III.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER SPREAD OF HOURS
      CLAIMS. ..................................................................................................................... 10

IV.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER OVERTIME CLAIMS .......
      ................................................................................................................................. 10

    A. Defendants paid the Plaintiff her regular rate, in cash, for overtime hours, and did not include
       the value of the MetroCard or housing in the Plaintiff's Regular Rate of pay when calculating
       overtime. ................................................................................................................... 10

    B. The value of the nightly lodging and the $100 monthly MetroCard must be included in the
       Plaintiff's Regular rate of pay. ................................................................................. 10

    C. Defendants are not entitled to apply the Reasonable Cost of housing or the monthly MetroCard
       to the Plaintiff's overtime. ....................................................................................... 12

    D. Any agreement to treat the housing and MetroCard as overtime is unenforceable. ................. 12

    E. The amount of overtime owed can be determined mathematically. ........................................ 13

V.   PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE NYLL AND THE
      FLSA ......................................................................................................................... 14

    A. Plaintiff is entitled to Liquidated Damages on FLSA and NYLL Overtime and Spread of Hours
       claims. ....................................................................................................................... 14

    B. Defendants have waived affirmative defenses to liquidated damages for failure to plead ........ 15

VI.  PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST ON HER UNPAID OVERTIME
      AND SPREAD OF HOURS CLAIMS. ............................................................................ 15

VII. IF JUDGMENT IS GRANTED AGAINST THE DEFENDANTS FOR A SUM CERTAIN,
      PLAINTIFF REQUESTS THAT THE COURT ORDER THAT THE JUDGMENT BE
      AUTOMATICALLY INCREASED BY 15% IN THE EVENT IT IS UNPAID ...................... 16

CONCLUSION .................................................................................................................... 16

# Table of Authorities

## Supreme Court Opinions

*Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 101 S. Ct. 1437 (1981) ............................. 13

*Brook. Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ................................................................. 12-13

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946) .................................................................... 13

*Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37 (1944) ......................................................... 13

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 89 L. Ed. 1705, 65 S. Ct. 1242 (1945) .................................................................................................................... 10-11, 11

## Second Circuit Opinions

*Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14CV7850 (VEC) (DF), 2016 U.S. Dist. LEXIS 155116 (S.D.N.Y. Nov. 7, 2016) ........................................................................ 9

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) ......................................................... 8

*Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317 (S.D.N.Y. 2010) ............................. 13

*Eschmann v. White Plains Crane Serv.*, No. 11-CV-5881 (KAM)(VVP), 2014 U.S. Dist. LEXIS 38580 (E.D.N.Y. Mar. 24, 2014) .................................................................... 13

*Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19 (E.D.N.Y. 2015) .................... 15

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89 (E.D.N.Y. 2010) ........... 13

*Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 U.S. Dist. LEXIS 167887 (E.D.N.Y. Dec. 2, 2016) ...................................................................................... 15, 16

*Howard v. Port Auth. of N.Y. & N.J.*, 684 F. Supp. 2d 409 (S.D.N.Y. 2010) ............................. 15

*Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) ............................. 11

*Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 889 F.2d 1248 (2d Cir. 1989) ........................ 15

*McLean v. Garage Mgmt. Corp.*, 2011 U.S. Dist. LEXIS 32760 (S.D.N.Y. Mar. 29, 2011) ...... 13

*Muhammed Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59 (2d Cir. 2016) .......... 14

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) ............................................. 13

*Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58 (2d Cir. 1997) ........................................ 14

*Spicer v. Pier Sixty L.L.C.*, 2011 U.S. Dist. LEXIS 11959 (S.D.N.Y. Feb. 7, 2011) ................. 15

*Toussie v. County of Suffolk*, 806 F. Supp. 2d 558 (E.D.N.Y. 2011) ......................................... 15

## Federal Court Opinions

*Lindsay v. Gov't Emps. Ins. Co.*, 371 U.S. App. D.C. 120, 448 F.3d 416 (D.C. Cir. 2006) ....... 13

*Masters v. Md. Mgmt. Co.*, 493 F.2d 1329 (4th Cir. 1974) ....................................................... 11

*Mendoza v. Uptown Buffet, Inc.*, No. 09-22799-CIV, 2010 U.S. Dist. LEXIS 96898 (S.D. Fla. Sept. 16, 2010) ...................................................................................................... 12

*Pineda v. JTCH Apts., L.L.C.*, 126 F. Supp. 3d 797 (N.D. Tex. 2015) ...................................... 12

*Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812 (9th Cir. 1945) .............................. 11, 12

**United States Code**

29 U.S.C. § 260 ............................................................................................... 15

29 U.S.C. § 203 ............................................................................................... 12

29 U.S.C. § 207 ............................................................................................... 11

**Other**

29 C.F.R. § 778.116 ........................................................................................ 11

12 NYCRR § 142-2.2 ...................................................................................... 13

12 NYCRR § 146 ............................................................................................ 10

NYLL § 191 ...................................................................................................... 2

NYLL § 191 ...................................................................................................... 1

NYLL § 195.1 ................................................................................................... 8

NYLL § 195.3 ................................................................................................... 9

NYLL § 198 ................................................................................................ 15, 16

NYLL § 198-1 ................................................................................................. 14

NYLL § 198(1-b) .............................................................................................. 9

NYLL § 198(1-d) .............................................................................................. 9

NYLL § 663 ......................................................................................... 13, 14, 16

## LEGAL ISSUE

"May an employer who furnishes lodging to an hourly employee *not* include the value of the lodging in the employee's regular rate of pay, but instead treat the lodging as a 'freestanding credit' to be invoked as a defense against an overtime lawsuit?"

## PROCEDURAL HISTORY

Plaintiff commenced this FLSA/NYLL case on August 5, 2016.  (*See* ECF No. 1).  In the complaint, Plaintiff asserted claims for overtime wages under the FLSA and NYLL (Counts 1 & 2), spread of hours pay under the NYLL (Count 3), statutory damages for wage notice and wage statement violations under the NYLL (Counts 4 & 5), and delayed wages under NYLL § 191 (Count 6).[1]  Defendants answer denying virtually all allegations was filed on September 28, 2016.[2]  Plaintiff decided after commencement not to pursue the collective action claims.

On July 11, 2017, Plaintiff served upon the Defendants a Statement of Material Facts Pursuant to Local Rule 56.1.[3]  On July 17, 2017 Defendants served a Counter-Statement of Material Facts which responded to Plaintiff's allegations and set forth additional allegations by the Defendants.[4]  Plaintiff's counsel has consolidated Plaintiff's 56.1 Statement and Defendants' Responses thereto into a single document entitled "Plaintiff's Statement of Material Facts with Defendants' Responses" ("Pl's 56.1 Stmt.").[5]  On July 21, 2017 Plaintiff served a response to Defendants' Counter-Statement of Material Facts ("Defs' 56.1 Stmt.").[6]

---

[1] The Complaint is annexed to the Moser Declaration as Exhibit 3.
[2] The Defendants' Answer is annexed to the Moser Declaration as Exhibit 4.
[3] Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 is annexed to the Moser Declaration as Exhibit 5.
[4] Defendants' Counter-Statement of Material Facts Pursuant to Local Rule 56.1 is annexed to the Moser Declaration as Exhibit 6.
[5] Plaintiff's 56.1 Stmt. is Annexed to the Moser Declaration as Exhibit 1.
[6] Plaintiff's Response to Defendants' Counter-Statement of Material Facts is annexed to the Moser Declaration as Exhibit 2.

By this motion the Plaintiff moves for Summary Judgment holding the defendant Mistry jointly and severally liable as an employer under the NYLL and the FLSA, and also moves for Summary Judgment on all Counts alleged in the complaint with the exception of Count 6 (Delayed Payment of Wages Under NYLL § 191).   In the event that summary judgment is granted by the Court Plaintiff requests that Count 6 be dismissed with prejudice.

## FACTS

### Undisputed Facts

The following facts are undisputed:

The Plaintiff was employed by the Soniya Hotel, LLC (the Hotel) from March 13, 2009 until April 18, 2015. (Pl's 56.1 Stmt. ¶ 1).   The Hotel is located at 1177 Northern Blvd., Manhasset, New York. (Pl's 56.1 Stmt. ¶ 2).   Plaintiff was employed as a Housekeeper during her entire employment with the Hotel. (Pl's 56.1 Stmt. ¶ 3).   In addition to performing her housekeeping duties, Plaintiff also worked as a Front Desk Clerk from June 9, 2011 until April 18, 2015. (Pl's 56.1 Stmt. ¶ 4).   Plaintiff was paid $8 per hour from Mar. 13, 2009 until Oct. 1, 2010, $9 per hour from Oct. 1, 2010 until May 9, 2014, and $9.50 per hour from May 9, 2014 until April 18, 2015. (Pl's 56.1 Stmt. ¶ 5).   Plaintiff was also compensated with lodging. (Pl's 56.1 Stmt. ¶ 5).¶

Harshad Mistry (Mistry) has been the general manager of the Hotel since 2008. (Pl's 56.1 Stmt. ¶ 7).   Mistry is a member of Defendant Soniya Hotel, LLC. (Pl's 56.1 Stmt. ¶  8).   Mistry has been a 50% owner of Soniya Hotel, LLC since it was formed in 2008. (Pl's 56.1 Stmt. 9).   Mistry has been the only person with authority to hire employees at the Hotel since 2008. (Pl's 56.1 Stmt. ¶ 10).   Mistry has been the only person with authority to terminate employees at the Hotel since 2008. (Pl's 56.1 Stmt. ¶ 11).   Since 2008 Mistry has been the sole individual with authority to discipline employees of the Hotel. (Pl's 56.1 Stmt. ¶ 12).   Mistry made the employee

schedules at the Soniya Hotel. (Pl's 56.1 Stmt. ¶ 13).  Mistry determined how hours worked by employees of the Hotel were recorded (Pl's 56.1 Stmt. ¶ 14).  Mistry has determined the method of payment of Hotel employees since 2008. (Pl's 56.1 Stmt. ¶ 15).  Mistry has always been a signatory on the Hotel's dedicated payroll account. (Pl's 56.1 Stmt. ¶ 16).  Mistry computed the number of compensable hours worked by employees of the Hotel. (Pl's 56.1 Stmt. ¶ 17).  Mistry has signed all employee paychecks since 2008. (Pl's 56.1 Stmt. ¶ 18).

Mistry was responsible for making the Plaintiff's schedule. (Pl's 56.1 Stmt. ¶ 19).  Mistry was responsible for paying the Plaintiff. (Pl's 56.1 Stmt. ¶ 20).  Mistry was responsible for supervising the Plaintiff. (Pl's 56.1 Stmt. ¶ 21).  Mistry was responsible for disciplining the Plaintiff. (Pl's 56.1 Stmt. ¶ 22).

At the time that Mistry hired the Plaintiff, he was aware that the law required the payment of  1 ½ times the regular rate of pay for all hours over 40 worked in a particular workweek. (Pl's 56.1 Stmt. ¶ 23).  Mistry has never heard of the Hospitality Industry Wage Order and does not know what it is. (Pl's 56.1 Stmt. ¶ 24).  In February 2013 a former employee by the name of Janice Walker sued the Hotel for overtime. (Pl's 56.1 Stmt. ¶ 25).  At least as early as February 2013, Mistry was made aware that an agreement not to pay the proper overtime rate was illegal. (Pl's 56.1 Stmt. ¶ 26).  After the Hotel was sued in February 2013, Mistry continued to pay employees their regular rate of pay for overtime hours worked "[a]s a favor to the employee[s]." (Pl's 56.1 Stmt. ¶ 27).

The Plaintiff regularly worked more than 40 hours per week. (Pl's 56.1 Stmt. ¶ 28).  The Defendants reported only the first 40 hours per week to ADP. (Pl's 56.1 Stmt. ¶ 29).  The Defendants paid the Plaintiff for overtime hours in cash at her regular rate of pay. (Pl's 56.1 Stmt. ¶ 30).

Every two weeks either Mistry or Mohammad Asad, the Assistant Manager, prepared a written summary of the payroll record. (Pl's 56.1 Stmt. ¶ 36).  The Defendants discarded the weekly payroll summary at the end of each week. (Pl's 56.1 Stmt. ¶ 37).  The Defendants "tossed" the weekly payroll summaries "in the garbage." (Pl's 56.1 Stmt. ¶ 38).  The Hotel does not have a record of the cash payment of wages to the Plaintiff. (Pl's 56.1 Stmt. ¶ 39).

The Defendants produced the Plaintiff's time cards in this litigation. (Pl's 56.1 Stmt. ¶ 40). The time cards accurately reflect the hours worked by the Plaintiff. (Pl's 56.1 Stmt. ¶ 41).

Plaintiff was furnished with a hotel room for her exclusive use from June 9, 2011 until her employment ended. (Pl's 56.1 Stmt. ¶ 42).  Plaintiff received the benefit of the hotel room regardless of how many hours she worked per week and regardless of whether she worked more than 40 hours per week. (Pl's 56.1 Stmt. ¶ 43).  The reasonable cost to the Defendants of furnishing the hotel room to the Plaintiff was $125 per night (or $875 per week). (Pl's 56.1 Stmt. ¶ 44).

Plaintiff was also furnished with $100 cash per month from February 2011 until her last date of employment for the purpose of purchasing a MetroCard. (Pl's 56.1 Stmt. ¶ 45).  The Plaintiff received the $100 in cash monthly regardless of how many hours she worked, and regardless of whether she worked more than 40 hours per week. (Pl's 56.1 Stmt. ¶ 46).

Whether the Plaintiff worked 32, 50, 60, or 100 hours per week, the value of the room and MetroCard furnished to her remained the same. (Pl's 56.1 Stmt. 47).  The Defendants did not include the value of the room or the value of the MetroCard in the Plaintiff's regular rate of pay. (Pl's 56.1 Stmt. ¶ 48).

The wage statements furnished to the Plaintiff did not include the value of the hotel room furnished to her or the $100 in cash that was paid to her each month. (Pl's 56.1 Stmt. ¶ 49).  The Plaintiff was never furnished with a wage notice. (Pl's 56.1 Stmt. ¶ 50).

There were times during her employment with the Hotel that the Plaintiff worked a spread of hours of more than ten. (Pl's 56.1 Stmt. ¶ 51).  For example, on January 31, 2015, plaintiff worked a spread of hours of 17. (Pl's 56.1 Stmt. ¶ 52).

## Facts On Which There Is No Genuine Dispute

Defendants attempt to create a question of fact with regard to the Plaintiff's overtime claims.  Defendants claim, for example, that "all employees were paid by the hour at their regular hourly rate and were paid overtime at one and a half times the regular rate*." (Defs.' 56.1 Stmt. ¶ 10.3).  Indeed, Mr. Mistry initially testified that he complied with the law.  However, at this point in the deposition Mr. Mistry had not yet been confronted with one of the weekly pay summaries that the Plaintiff retrieved from the garbage. (Dep. Exhibit 21)[7].  When Mr. Mistry was confronted with the weekly pay summary that he had "tossed in the garbage", he was forced to admit the truth about the payment of overtime at the Hotel:

Q        You have arrangements with employees…[t]hat you're going to pay
         them their overtime hour in cash at their regular rate of pay, correct?

A        Yes.

Q        This is not just with Gabriela [Balczyrak]?

A        Right.

Q        It's with Drew, correct?

A        Right.

Q        It's with Asad?

---

[7]The transcript of the deposition testimony of Harshad Mistry (Mistry Dep.) with selected Deposition Exhibits is annexed to the Moser Declaration as Exhibit 7.

A        Right.

Q        It's with Janice Walker, correct?

A        Yes.

Q        And did you have this arrangement with any other people?

A        I don't know.

Q        But it could be that you had this arrangement with other people as well?

A        Could be.

(Mistry Dep. 112:24-113:19). Even after Mr. Mistry was sued for overtime violations in February

2013, he continued to pay employees for overtime hours at their regular rate of pay.

Q        Did you believe when you were sued in February of 2013, that your agreements with employees to pay them overtime at their regular rate of pay were against the law?

         *  *  *

A        Yes.

Q        And you still continued to pay employees after that date their regular rate of pay for overtime hours worked; is that correct?

A        Yes.

Q        As a favor to the employee?

A        Yes.

(Mistry Dep. 114:11-115:5). Mr. Mistry justified his actions as follows:

I understand the laws, but the laws do[]n't help [my employees], I do…    Of course it's illegal.  I fully understand.

(Mistry Dep. 112:10-17).

**Lodging and MetroCard**

The Defendants did not include the lodging and MetroCard furnished to the Plaintiff in the Plaintiff's regular rate of pay.[8]  Instead, they applied the value of the lodging and the MetroCard to the overtime premium owed.[9]  Mr. Mistry testified that he made the Plaintiff aware of the legality of paying the regular rate for overtime hours, and she said "Harry, just give me [] regular over and above 40 hours, just give me regular pay."  (Mistry Dep. 60:15-21).  Mr. Mistry agreed would "give" the Plaintiff more hours in exchange for her agreement to be paid her "regular rate" for all hours worked.  (Mistry Dep. 61:6-13).

But the agreement did not end there.  Mr. Mistry also agreed to furnish housing at a value of $125 per night.  He told Ms. Balczyrak, "in case something happens, this room I'm giving you as part of the compensation and the rate is $125."  (Mistry Dep. 61:13-62:3)(emphasis supplied).  Mr. Mistry recorded the conversation in his contemporaneous notes:

> I have discussed the 40 hours legal issues with [Gabriela] and [] believe she waived the labor OT issues as long as she gets free accommodations for her to stay… I have also discussed that in case of future conflict about your wage, room accommodation $125 a night.  That will be applied as your OT compensation.

(Mistry Dep. 74:6-11)(emphasis supplied).

In this way, the Defendants treated the Plaintiff's lodging not as part of the Plaintiff's regular rate, but rather as an "insurance policy" against an overtime lawsuit if she ever sued for her overtime premium.  They now assert that because the value of her housing exceeded her overtime premium, she is not entitled to any overtime compensation in this lawsuit.

The Plaintiff did not understand or agree that the housing or any cash received for a MetroCard purchase would be applied towards her overtime.  However, for the purpose of this

---

[8] Mistry Dep. 83:16-22; Pl's 56.1 Stmt. ¶ 48 (which was not denied, and therefore admitted).

[9] *See* Pl's 56.1 Stmt. ¶ 5 (in which Defendants admit that the Plaintiff's regular rate of pay was between $8.00-$9.50 per hour but that the Plaintiff was paid for "overtime…in cash and in  non-monetary compensation  and  benefits,  including lodging."); Pl's 56.1 Stmt. ¶ 48 (in which defendants admit that "[t]he value of the non-monetary compensation, including lodging and the cash for the MetroCard, was included as part of the Plaintiff's overtime pay.")

motion, Plaintiff will accept the Mr. Mistry's version of the facts.  Even assuming, however, that

there was an explicit and mutual agreement between the parties (1) not to include the value of the

lodging or cash for the MetroCard in the Plaintiff's regular rate of pay and (2) to invoke the

housing as payment for overtime in the event of a lawsuit, the agreement violates the FLSA and

the NYLL, and therefore is unenforceable.

## ARGUMENT

## I.   MR. MISTRY IS LIABLE AS AN EMPLOYER UNDER THE FLSA

Defendant Mistry (1) had the power to hire and fire the Plaintiff and other employees, (2)

supervised and controlled work schedules of the Plaintiff and other employees, or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained (and in the case

of payroll summaries, threw out) employment records. Therefore, he is jointly and severally liable

as an employer.  *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).

## II.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER WAGE NOTICE AND WAGE STATEMENT CLAIMS.

The Plaintiff was never furnished with a wage notice. (Pl's 56.1 Stmt. ¶ 50).  Although the

Plaintiff was furnished with statements from ADP, these statements did not include cash

overtime, the value of the hotel room furnished to her, or the $100 in cash that was paid to her

each month for the MetroCard. (Pl's 56.1 Stmt. ¶ 49).

Effective April 9, 2011, the New York Wage Theft Prevention Act (WTPA) requires

employers to furnish annual wage notices in English and the employee's primary language on or

before February 1st of each year for the years 2012-2015.[10] NYLL § 195.1. "The WTPA imposes

statutory damages of $50 per work week, capped at $2,500, for the failure to provide employees

with compliant annual wage notices, where such violations occurred between April 9, 2011 and

---

[10] Effective February 27, 2015, the annual wage notice requirement was eliminated.

February 27, 2015." *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14CV7850 (VEC) (DF), 2016 U.S. Dist. LEXIS 155116, at *48-4 (S.D.N.Y. Nov. 7, 2016); NYLL § 198(1-b).  Effective February 27, 2015, penalties for wage notice violations were increased to $50 per workday, and capped at $5,000.00.  NYLL § 198(1-b).  Because Plaintiff worked more than 50 weeks between April 9, 2011 and February 27, 2015 she is entitled to the maximum of $2,500 for this period.  Because she worked an additional 46 days on and after February 27, 2015, she is entitled to an additional $2,300 in statutory damages, for a total of $4,800.

The WTPA also requires employers to furnish an accurate wage statement with each payment of wages showing the calculation of wages, deductions, and other information.  NYLL § 195.3.  "The WTPA imposes statutory damages of $100 per work week, capped at $2,500, for the failure to provide employees with compliant wage statements, where such damages were incurred between April 9, 2011 and February 27, 2015." *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14CV7850 (VEC) (DF), 2016 U.S. Dist. LEXIS 155116, at *48-4 (S.D.N.Y. Nov. 7, 2016); NYLL § 198(1-d).  Effective February 27, 2015, penalties for wage statement violations were increased to $250 per workday, and capped at $5,000.   Because Ms. Balczyrak was employed by Defendants from before April 9, 2011 until approximately May 2014[11] (*i.e.,* in excess of 25 weeks), she is entitled to the maximum amount of $2,500 in statutory damages for this time period.   Because the Plaintiff worked more than ten days after the increased penalty provision became effective on February 27, she is entitled to an additional $2,500 in statutory damages, for a total of $5,000.00.

---

[11] Pl. 56.1 Stmt. ¶ 23.

### III.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER SPREAD OF HOURS CLAIMS.

As previously mentioned, there were times during her employment with the Hotel that the Plaintiff worked a spread of hours of more than ten. (Pl's 56.1 Stmt. ¶ 51).  Mr. Mistry does not know what spread of hours pay is and does not believe that he has ever paid spread of hours pay to any employee of the hotel.  (Mistry Dep. 94:16-21).

As a hotel, Defendants are subject to New York's Hospitality Industry Wage Order.  12 N.Y.C.R.R. § 146.  Under the wage order, all hotel employees who work a spread of hours in excess of ten are entitled to receive one additional hour of pay at the basic minimum wage.  12 N.Y.C.R.R. §146-1.6(a) & (d).

Because the parties agree that the Plaintiff's time card records are accurate, the amount of spread of hours' pay owed can be calculated simply by multiplying the number of days in which the spread of hours exceeded 10 by the applicable minimum wage.

### IV.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HER OVERTIME CLAIMS

#### A.   Defendants paid the Plaintiff her regular rate, in cash, for overtime hours, and did not include the value of the MetroCard or housing in the Plaintiff's Regular Rate of pay when calculating overtime.

The Defendants paid the Plaintiff for overtime hours in cash at her regular rate of pay. (Pl's 56.1 Stmt. ¶ 30).  Mistry never included the value of the hotel room or the value of the MetroCard in determining the Plaintiff's regular rate of pay. (Mistry Dep. 83:16-20).

#### B.   The value of the nightly lodging and the $100 monthly MetroCard must be included in the Plaintiff's Regular rate of pay.

The regular rate is "the hourly rate actually paid the employee for the normal, *non-overtime workweek* for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*,

325 U.S. 419, 424, 89 L. Ed. 1705, 65 S. Ct. 1242 (1945) (emphasis supplied); *Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002).

Under the FLSA, the regular rate is "deemed to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). An employee's regular rate of pay "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Walling*, 325 U.S. at 424, 89 L. Ed. 1705, 65 S. Ct. 1242; *see* 29 C.F.R. § 778.116 ("the reasonable cost to the employer" of furnishing housing "must be included in the regular rate."); *Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812, 815 (9th Cir. 1945) ("The cost of board and lodging customarily furnished employees must also be included in the regular rate."); *Masters v. Md. Mgmt. Co.*, 493 F.2d 1329, 1333 (4th Cir. 1974) (including value of use of "cabana" in wages for purposes of determining regular rate); *Mc Laughlin v. Quan*, 1988 U.S. Dist. LEXIS 17549 (1988), No. 87- A-423, 1988 WL 62595, *4 (D. Colo. June 17, 1988) ("As a general rule, lodging [] provided by an employer to an employee is properly considered a component of the employee's wages, such that the cost of these facilities must be added into the employee's regular rate."); *accord Keun-Jae Moon*, 248 F. Supp. 2d at 230.

Defendants admit that the reasonable cost to the Defendants of furnishing the hotel room to the Plaintiff was $125 per night (or $875 per week). (Pl's 56.1 Stmt. ¶ 44). Defendants admit that even when the Plaintiff worked 40 hours or less, she was furnished lodging each day and $100 cash monthly ($25 per week) to purchase a MetroCard. The total additional compensation of $900 per week must be added to the Plaintiff's regular rate for the period from June 9, 2011 until her last day of employment, April 18, 2015. (Pl's 56.1 Stmt. ¶¶ 1, 42).

### C.   Defendants are not entitled to apply the Reasonable Cost of housing or the monthly MetroCard to the Plaintiff's overtime.

Although in certain situations, an employee's wages may include "the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities," such reasonable cost of lodging can only be computed when determining the employee's regular rate of pay, such as when assessing whether the employee's regular rate comports with the FLSA's minimum wage requirements. 29 U.S.C. § 203(m); *Walling v. Alaska Pac. Consol. Mining Co.*, 152 F.2d 812, 815 (9th Cir. 1945), *cert. denied*, 327 U.S. 803, 66 S. Ct. 960, 90 L. Ed. 1028 (1946). The provision of housing is not, however, to be considered payment for overtime wages. *Walling*, 152 F.2d at 815 (rejecting employer's argument that the cost of board and lodging can be included as part of an employee's overtime compensation).

*Pineda v. JTCH Apts., L.L.C.*, 126 F. Supp. 3d 797, 807-08 (N.D. Tex. 2015).

The value of housing provided by an employer cannot be considered as an offset for any overtime wages owed.  *Mendoza v. Uptown Buffet, Inc.*, No. 09-22799-CIV, 2010 U.S. Dist. LEXIS 96898, at *9 (S.D. Fla. Sept. 16, 2010).

[A]ny credit for lodging must be considered as part of Plaintiffs' wage and cannot simply be used as a free-standing credit for overtime to be invoked at will whenever Plaintiffs happen to work more than 40 hours a week.  To the extent that Defendants seek to use the credit in this way, that argument is misplaced and not permitted by the FLSA. Rather, these benefits were simply part of Plaintiffs' regular salary, just as the cash and checks he received every month were part of that salary and Plaintiffs' wages are to be determined as the regular cash value they were paid in addition to the reasonable cost of lodging for that pay period.

*Mendoza v. Uptown Buffet, Inc.*, No. 09-22799-CIV, 2010 U.S. Dist. LEXIS 96898, at *9 (S.D. Fla. Sept. 16, 2010) (citing *Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 230-31 (S.D.N.Y. 2002)) (internal citations and quotations omitted).

### D.   Any agreement to treat the housing and MetroCard as overtime is unenforceable.

Any agreement between the parties to not include certain compensation in the regular rate, and to offset overtime owed is unenforceable.  FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 707

12

(1945); *see D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16 (1946); *Walling v. Helmerich & Payne, Inc., 32*3 U.S. 37, 42 (1944); *Overnight Motor Transportation Co.* v. *Missel, supra*, at 577; *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 1445 (1981).

Similarly, any agreement between the parties to violate the NYLL is unenforceable.  The operative statute for recovery of unpaid overtime wages under 12 NYCRR 142-2.2 is NYLL § 663.  *See Eschmann v. White Plains Crane Serv.*, No. 11-CV-5881 (KAM)(VVP), 2014 U.S. Dist. LEXIS 38580, at *1 (E.D.N.Y. Mar. 24, 2014); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 94 (E.D.N.Y. 2010); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 320 (S.D.N.Y. 2010); *Lindsay v. Gov't Emps. Ins. Co.*, 371 U.S. App. D.C. 120, 448 F.3d 416, 419 (D.C. Cir. 2006); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 340 n.82 (S.D.N.Y. 2004).

And "[s]ection 663 of the NYLL, which creates the private cause of action to enforce the right [to compensation for overtime pay under] NYCRR § 142-2.2, states that 'if any employee is paid . . . less than the wage to which he is entitled under the provisions of this article . . . any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.'" *McLean v. Garage Mgmt. Corp.*, 2011 U.S. Dist. LEXIS 32760, at *10-11 (S.D.N.Y. Mar. 29, 2011).

### E.   The amount of overtime owed can be determined mathematically.

The parties agree that the Plaintiff was paid her regular rate, in cash, for all overtime hours owed, and that the time clock records accurately reflect all hours worked.  The Defendants concede that the additional weekly compensation in lodging was $875, and that the Plaintiff was furnished with $100 in cash monthly (or approximately $25 per week) for a MetroCard.  Once this additional compensation is added into the Plaintiff's regular rate, her proper overtime rate can

be calculated.   The overtime obligation can be computed by awarding the Plaintiff her overtime

rate for all hours worked in excess of 40, and subtracting the cash paid to her for overtime hours.

## V.   PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE NYLL AND THE FLSA

### A.   Plaintiff is entitled to Liquidated Damages on her FLSA and NYLL overtime and spread of hours claims.

Liquidated damages are available under the NYLL and the FLSA.

Under the FLSA, an employer who underpays an employee is liable "in the amount" of those unpaid wages "and in an additional equal amount as liquidated damages" unless the employer shows to the satisfaction of the court that its behavior giving rise to the FLSA violation "was in good faith" and that it had "reasonable grounds" for believing it was not in violation of the FLSA.

*Muhammed Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60-61 (2d Cir. 2016)

(citing 29 U.S.C. § 260).

"[T]he employer bears the burden of establishing, by 'plain and substantial' evidence,

subjective good faith and objective reasonableness." *Reich v. S. New Eng. Telecomms. Corp.*, 121

F.3d 58, 70-71 (2d Cir. 1997) (citing 29 U.S.C. § 260). This burden, "is a difficult one to meet,

however, and '[d]ouble damages are the norm, single damages the exception.'" *Id.* at 71 (quoting

*Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987)).

The New York Labor Law, like the FLSA, provides for an award of liquidated damages of

100% of the amount owed "unless the employer proves a good faith basis to believe that its

underpayment of wages was in compliance with the law."  NYLL § 198-1(a); NYLL § 663.  Prior

to April 9, 2011, New York law provided for liquidated damages of 25% of the amount owed.  *Id.*

"The New York Labor Law and the Fair Labor Standards Act of 1938 liquidated damages

provisions are identical in all material respects." *Muhammed Chowdhury*, 666 F. App'x at 60.  In

light of the fact that both the NYLL and the FLSA provide identical forms of relief for liquidated

damages, there has been an "emerging trend towards denying a cumulative recovery of damages'

under the FLSA and NYLL." *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 U.S. Dist. LEXIS 167887, at *35 (E.D.N.Y. Dec. 2, 2016) (adopted Guardado v. 13 Wall St., Inc., Civil Action No. 15-2482(DRH)(SIL), 2016 U.S. Dist. LEXIS 179853, at *1 (E.D.N.Y. Dec. 29, 2016)).  Plaintiff therefore does not seek cumulative liquidated damages under the FLSA and the NYLL.

### B.   Defendants have waived affirmative defenses to liquidated damages for failure to plead.

Good faith is an affirmative defense under the FLSA. *Howard v. Port Auth. of N.Y. & N.J., 6*84 F. Supp. 2d 409, 411 (S.D.N.Y. 2010); 29 U.S.C.S. § 260.  Good faith is also an affirmative defense to liquidated damages under NYLL § 198. *Spicer v. Pier Sixty L.L.C.*, 2011 U.S. Dist. LEXIS 11959, at *15 (S.D.N.Y. Feb. 7, 2011).

Rule 8(c)(1) requires an answering party to "affirmatively state any avoidance or affirmative defense." "[F]ailure to plead an affirmative defense results in waiver of that defense and its exclusion from the case."  *U.S. on behalf of Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co., 88*9 F.2d 1248, 1253 (2d Cir. 1989); *Toussie v. County of Suffolk*, 806 F. Supp. 2d 558, 591 (E.D.N.Y. 2011).

Defendants answer does not raise any affirmative defenses to liquidated damages under the FLSA or the NYLL.  Therefore these defenses are waived.  It bears noting, however, that even if Defendants had pled such affirmative defenses, Mr. Mistry's statement that he was aware that the failure to pay overtime was illegal would nonetheless entitle the Plaintiff to summary judgment on the issue of liquidated damages.

## VI.   PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST ON HER UNPAID OVERTIME AND SPREAD OF HOURS CLAIMS.

"[T]he NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015). Under the

New York Civil Practice Law and Rules, "[i]nterest shall be at the rate of nine per centum per annum." N.Y. C.P.L.R. § 5004.  "Where, as here, unpaid wages are 'incurred at various times, interest shall be computed . . . from a single reasonable intermediate date.'" *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 U.S. Dist. LEXIS 167887, at *39 (E.D.N.Y. Dec. 2, 2016) (citing N.Y. C.P.L.R. 5001(b)). A common date applied is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ." *Id.*.

Here the earliest ascertainable date on which a cause of action existed was at the commencement of the Plaintiff's employment on March 13, 2009. (Pl's 56.1 Stmt. ¶ 1).  Since this case was commenced on August 16, 2016, the precise midpoint date is November 28, 2012.

## VII.   IF JUDGMENT IS GRANTED AGAINST THE DEFENDANTS FOR A SUM CERTAIN, PLAINTIFF REQUESTS THAT THE COURT ORDER THAT THE JUDGMENT BE AUTOMATICALLY INCREASED BY 15% IN THE EVENT IT IS UNPAID

Both NYLL § 198(4) and § 663(4) state:

Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

Plaintiff requests that if the Court awards a sum certain, that the order provide for an automatic increase consistent with NYLL §§ 198(4) and 663(4).

## CONCLUSION

Annexed to the Declaration of Paola Dominguez are detailed spreadsheets itemizing damages based upon the legal principles set forth in this memorandum of law, and the evidence submitted in support of this motion.  For the reasons stated herein, Plaintiff respectfully requests that the Court grant summary judgment to the Plaintiff on the issue of joint and several liability of

Harshad Mistry and on Counts 1-5 of the Complaint, and that the court grant judgment to the

Plaintiff for a sum certain.

Dated: Glen Cove, New York
          September 1, 2017

                                        Moser Employment Law Firm, P.C.


                                        By: Steven John Moser