UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

GABRIELA BALCZYRAK-LICHOSYT,

                              Plaintiff,

       -against-

SONIYA HOTEL, LLC and HARSHAD MISTRY
a/k/a "HARRY MISTRY,"

                              Defendants.

---------------------------------------------------------------------x

**MEMORANDUM AND
ORDER**
16-cv-4386 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated August 5, 2016, Plaintiff Gabriela Balczyrak-Lichosyt ("Balczyrak-Lichosyt" or "Plaintiff") commenced this wage and hour action, individually and on behalf of others similarly situated, against Defendants Soniya Hotel, LLC ("Soniya" or the "Hotel") and Harshad Mistry a/k/a "Harry Mistry" ("Mistry") (together, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* *See* Complaint ("Compl."), Docket Entry ("DE") [1]. Presently before the Court is Plaintiff's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for an Order: (i) finding Mistry jointly and severally liable as an employer under the FLSA and NYLL; (ii) granting summary judgment in favor of Balczyrak-Lichosyt and against Defendants on Counts One through Five of the Complaint; and (iii) entering judgment against Defendants for a sum certain.[1]

---

[1] The parties have consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636. *See* DE [28].

*See* DE [31]. For the reasons set forth herein, Plaintiff's motion is granted in its entirety.

## I.    FACTUAL BACKGROUND

The following facts are taken from the parties' pleadings, declarations, exhibits, and respective Local Rule 56.1 statements. Unless otherwise noted, these facts are not in dispute.

From March 13, 2009 through April 18, 2015, Plaintiff was employed as a housekeeper by Soniya, a hotel located at 1177 Northern Boulevard, Manhasset, New York. *See* Plaintiffs' Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1"), Declaration of Steven J. Moser in Support of Motion for Summary Judgment ("Moser Decl."), DE [31-2], Exhibit ("Ex.") 5, ¶¶ 1-3. Balczyrak-Lichosyt also worked as a front-desk clerk, in addition to performing her duties as a housekeeper, from June 9, 2011 through April 18, 2015. *See id.* ¶ 4.

Since the Hotel opened in 2008, Mistry has been a 50% owner/member of Soniya and has served as the general manager. *See id.* ¶¶ 7-9. In that capacity, Mistry has maintained and exercised broad managerial authority. Specifically, Mistry: (i) has been the sole individual with authority to hire, terminate, and discipline employees of the Hotel; (ii) has established Soniya employee schedules; (iii) has determined the methods by which hours worked by employees of the Hotel are recorded; (iv) has determined the method of payment of Soniya employees; (v) has computed the number of compensable hours worked by employees of the Hotel; (vi) has been a signatory on Soniya's dedicated payroll account; and (vii) has signed all Hotel employee paychecks. *See id.* ¶¶ 10-18. Consequently, Mistry was at all times

responsible for paying, supervising, establishing the schedule for, and disciplining Plaintiff. *See id.* ¶¶ 19-22.

During her employment with Soniya, Balczyrak-Lichosyt received wages at rates of $8.00 per hour from March 13, 2009 through October 1, 2010, $9.00 per hour from October 1, 2010 through May 9, 2014, and $9.50 per hour from May 9, 2014 through April 18, 2015. *See id.* ¶ 5. Plaintiff regularly worked more than 40 hours per week. *See id.* ¶ 28. Moreover, there were occasions when Balczyrak-Lichosyt worked a spread of hours of more than ten. *See id.* ¶ 51. For example, Plaintiff worked a spread of hours of 17 on July 31, 2015. *See id.* ¶ 52. Balczyrak-Lichosyt was engaged in physical labor for at least 25% of her working time each week of her employment. *See id.* ¶ 56.

The Hotel reported only Plaintiff's first 40 hours of working time per week to ADP—the company responsible for Soniya's payroll processing—and paid her for overtime hours in cash at her regular rate of pay. *See id.* ¶¶ 29, 30; Moser Decl., Ex. 7, 27:10-12. Pursuant to an agreement between Balczyrak-Lichosyt and Mistry, Plaintiff received non-monetary compensation and benefits in lieu of the proper overtime rate for overtime hours. *See* Pl.'s 56.1 ¶ 31; Defendant's Counter Statement of Material Facts Pursuant to Local Rule 56.1 Amended ("Defs.' 56.1") Responses, Moser Decl., Ex. 6., ¶ 31. Mistry also had arrangements concerning overtime pay with various other Hotel employees. *See* Pl.'s 56.1 ¶¶ 32-35.

From June 9, 2011 through the end of Balczyrak-Lichosyt's employment on April 18, 2015, Soniya furnished Plaintiff with a hotel room for her exclusive use. *See id.* ¶ 42. Balczyrak-Lichosyt was the only employee that was provided with a hotel

room, *see* Def.'s 56.1 Additional Facts ¶ 4, and she received the benefit of the room irrespective of the number of hours she worked in a particular week, s*ee id.* ¶ 43. The reasonable cost of providing the hotel room to Plaintiff was $125.00 per night. *See id.* ¶ 44. In addition to lodging, Balczyrak-Lichosyt received $100.00 in cash per month, from February 2011 through April 2015, for the purpose of purchasing a MetroCard, also without regard to the number of hours she worked. *See id.* ¶ 45-47. Moreover, the Hotel offered Plaintiff paid lunch breaks and vacation as well as health insurance. *See* Def.'s 56.1 Additional Facts ¶¶ 5-7. Neither the value of the room nor the value of the MetroCard was included in Balczyrak-Lichosyt's regular rate of pay. *See id.* ¶ 48. According to notes contemporaneously recorded by Mistry during a meeting with Plaintiff on June 9, 2011, Balczyrak-Lichosyt expressly agreed to an arrangement whereby the value of the hotel room furnished by the Hotel would be applied as overtime compensation:

> I have discussed the 40 hrs legal issues with her and verbally she waived the labor OT issues as long as she gets a free accommodation for her to stay . . . . I have also discussed that in case of a future conflict about your wage, room accommodation is $125/night that will be applied as your OT compensation, and she is fully aware of it . . . . [Plaintiff] fully understood and agreed with the payment arrangement . . . .

Moser Decl., Ex. 16 at 4 (errors in original). Plaintiff, however, disputes the notion that she understood and agreed that the cost of housing or any cash received to purchase a MetroCard would be applied towards her overtime. *See* Declaration of Gabriela Balczyrak-Lichosyt, DE [33], ¶¶ 10, 11 ("Although I was furnished with a room and a Metrocard . . . Mistry never told me, nor . . . [did I] agree[,] that the room or Metrocard were payment for my overtime.").

Employees were instructed to record their time by punching time cards. *See* Def's 56.1 Additional Facts ¶ 11. From those cards, the hours were calculated and supplied to ADP for processing. *See id.* Every two weeks, either Mistry or Mohammad Asad, the Hotel's front-desk manger, prepared a written summary of the payroll records. *See id.* ¶¶ 6, 36; Moser Decl., Ex. 21. Defendants discarded the weekly payroll summary at the end of each week and, thus, have no record of the cash payment of wages to Balczyrak-Lichosyt. *See id.* ¶¶ 37-38. Soniya furnished wage statements to Plaintiff, but such records did not include the cash overtime, the value of the hotel room, or the $100.00 monthly cash payment provided to her. *See id.* ¶ 49. Nor did the Hotel provide Balczyrak-Lichosyt with a wage notice. *See id.* ¶ 50. The Hotel did, however, retain Plaintiff's time cards, which were produced in discovery and accurately reflect the hours she worked. *See id.* ¶¶ 40-41.

When Mistry hired Balczyrak-Lichosyt in 2009, he was aware that federal law requires the Hotel to pay its employees a rate of time-and-a-half for all hours worked in excess of 40 in a given workweek.[2] *See id.* ¶ 23. Several years after Plaintiff was hired, in February 2013, a former employee of Soniya named Janice Walker sued the Hotel for violations of laws governing overtime pay. *See* Pl.'s 56.1 ¶ 25. Either upon or prior to commencement of that suit, Mistry became aware that an agreement not to pay the proper overtime rate was illegal. *See id.* ¶ 26. Notwithstanding this knowledge, Mistry continued to pay Soniya employees, including Balczyrak-Lichosyt,

---

[2] During his deposition in April 2017, Mistry testified that he was not familiar with the New York State Hospitality Industry Wage Order. *See* Pl.'s 56.1 ¶ 24; Moser Decl., Ex. 7, 23:25-24:6; N.Y. Comp. Codes R. & Regs., tit. 12, § 146-1 *et seq.*

their regular rate of pay for overtime hours worked, "as a favor" to such employees. *See id.* ¶ 27; Moser Decl., Ex. 7, 114:24-115:5.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action, individually and on behalf of others similarly situated, by way of Complaint dated August 5, 2016, which asserts claims for: (i) overtime wages under the FLSA; (ii) overtime wages under the NYLL; (iii) spread of hours pay under the NYLL; (iv) statutory damages for wage notice violations under the NYLL; (v) statutory damages for wage statement violations; and (vi) delayed wages under the NYLL. *See* Compl. at pp. 6-9. Defendants filed their Answer on September 28, 2016. *See* DE [10]. Sometime after Balczyrak-Lichosyt filed the Complaint, she decided not to pursue the collective action claims. *See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("Pl.'s Mem."), DE [31-1], at 1.

After approximately one year of discovery, the parties filed an executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form pursuant to 28 U.S.C. § 636 on August 24, 2017, which the Honorable Arthur D. Spatt So Ordered the following day. *See* DEs [27], [28]. Thereafter, on October 2, 2017, Plaintiff filed the instant, fully-briefed motion for summary judgment. *See* DEs [31]-[35].

## III.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary

judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party."). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is

well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## IV.  DISCUSSION

Applying the standards outlined above, and for the reasons set forth below, Balczyrak-Lichosyt's motion for summary judgment is granted in its entirety.

### A. **Mistry's Status as an Employer Under the FLSA and NYLL**

As a preliminary matter, Plaintiff seeks to hold Mistry jointly and severally liable as an employer under the FLSA and NYLL.  Defendants to not oppose this portion of Balczyrak-Lichosyt's motion.  Under the FLSA, any "employer" who violates the statute's provisions may be held liable for such violations.  *See, e.g.*, 29 U.S.C. § 207(a)(1).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." *Id.* § 203(d). To determine whether an individual is an "employer" under the FLSA, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984)).  In addition, the analysis depends on whether the defendant had "operational control" over employees.  *Irizarry*, 722 F.3d at 110. Operational control does not necessarily require direct contact with employees and their workplaces; instead, "[a] person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the

nature or conditions of the employees' employment." *Id.* These factors do not

"'comprise a rigid rule for the identification of [an] FLSA employer,' but rather

provide a guideline 'to ensure that the economic realities test mandated by the

Supreme Court is sufficiently comprehensive and flexible to give proper effect to the

broad language of the FLSA.'" *Jin Dong Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241,

253 (E.D.N.Y. 2015) (quoting *Irizarry*, 722 F.3d at 105). *Id.* The NYLL's definition

of "employer" mirrors that of the FLSA. *See* N.Y. Lab. Law §§ 190(3), 651(6). District

courts in this Circuit have therefore "consistently interpreted the definition of

'employer' under the New York Labor Law coextensively with the definition used by

the FLSA.'" *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y.

2015) (quoting *Ho v. Sim Enters. Inc.*, No. 11-cv-2855, 2014 WL 1998237, at *10

(S.D.N.Y. May 14, 2014)).

Here, it is undisputed that Mistry had full operational control over all Hotel

employees, including Plaintiff. Indeed, as explained above, Mistry had the authority

to hire, terminate, and discipline employees, as well as control employee work

schedules and conditions of employment. *See* Pl.'s 56.1 ¶¶ 10-14. Further, Mistry

was responsible for determining Soniya employees' rates and methods of pay and

maintaining the Hotel's employment and payroll records. *See id.* ¶¶ 15-18. The Court

therefore concludes that Mistry is jointly and severally liable as an employer under

the FLSA and NYLL.

B. **Plaintiff's Overtime Claims**

Balczyrak-Lichosyt seeks summary judgment on her overtime claims under the FLSA and the NYLL on the basis that there is uncontroverted evidence that Defendants: (i) paid her for overtime hours at her regular rate of pay; and (ii) failed to include the value of the hotel room and MetroCard in the regular rate of pay when calculating overtime.

1. FLSA

The FLSA provides, in relevant part, that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The FLSA defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee," with eight enumerated exceptions not relevant here. 29 U.S.C. § 207(e). The United States Supreme Court has described an employee's "regular rate" of pay as "the hourly rate actually paid the employee for the normal, non-overtime work-week for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242, 1245 (1945). As the Court explained in *Walling*:

> The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result

of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts.

*Id.* at 424-25, 65 S. Ct. at 1245. Because the "FLSA deems the regular rate of pay to include 'all remuneration for employment paid to, or on behalf of, the employee,' 29 U.S.C. § 207(e), . . . the reasonable cost or fair value of all . . . lodging provided by an employer must be added to the cash wages when calculating an employee's regular rate." *Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002); *see Jiao v. Shi Ya Chen*, No. 03-cv-0165, 2007 WL 4944767, at *13 (S.D.N.Y. Mar. 30, 2007) ("The compensation that an employee receives as part of his regular rate of pay includes 'the reasonable cost . . . to the employer of furnishing such employee with . . . lodging' that the employer 'customarily furnishe[s]' to its employees." (alterations in original) (quoting 29 U.S.C. § 203(m)). "'[W]here board, lodging, or other facilities are customarily furnished [in] addition to a cash wage, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay,' not part of his compensation for overtime." *Moon*, 248 F. Supp. 2d at 233 (brackets in original) (quoting 29 C.F.R. § 531.37); *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 271-72 (E.D.N.Y. 2008) ("[C]redit[s] for the wages [the defendants] paid to [the] plaintiff with respect to the value of . . . lodging . . . can only be used as set-offs against minimum wage claims, not overtime claims.").

Here, Mistry unequivocally testified that he never included the value of the hotel room and MetroCard in calculating Plaintiff's regular rate of pay. *See* Moser Decl., Ex. 7, 83:16-22. In addition, it is undisputed that Plaintiff regularly worked more than 40 hours per week and that the Hotel paid her for overtime hours in cash

at her regular rate of pay. *See* Pl.'s 56.1 ¶¶ 28, 30. Defendants, moreover, concede that they provided Balczyrak-Lichosyt with the hotel room and cash to purchase a MetroCard irrespective of how many hours she worked, and even when she worked less than 40 hours per week. *See id.* ¶¶ 43, 46, 47. Hence, as Plaintiff received both such benefits "regularly during the workweek, exclusive of overtime payments," *Walling*, 325 U.S. at 424, 65 S. Ct. at 1245, the Court concludes that Defendants have violated 29 U.S.C. § 207(a)(1) by failing to include their reasonable cost in Balczyrak-Lichosyt's regular rate of pay when calculating overtime. *See Walling v. Alaska Pac. Consol. Min. Co.*, 152 F.2d 812, 815 (9th Cir. 1945); *see also Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464, 68 S. Ct. 1186, 1196 (1948) (holding that it "cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee, it must be drawn from what happens under the employment contract."). As a corollary to this conclusion, and because Soniya "customarily furnished" Plaintiff with a hotel room and cash for a monthly MetroCard, *see Moon*, 248 F. Supp. 2d at 233, Defendants likewise may not apply the cost of such items to Balczyrak-Lichosyt's overtime. *Cf. Sun v. AAA Venture Capital, Inc.*, No. 15-cv-4325, 2016 WL 5793198, at *8 (E.D.N.Y. Sept. 12, 2016) ("[D]aily meal reimbursements should be included in the total weekly wages paid since they were regularly and customarily provided to the employees, who lived on site." (citing 29 C.F.R. § 531.31)), *report and recommendation adopted*, 2016 WL 5678561 (E.D.N.Y. Sept. 30, 2016), *and report and recommendation adopted as modified*, 2016 WL 5868579 (E.D.N.Y. Oct. 6, 2016).[3]

---

[3] Though the court in *Moon* did observe that there was "no evidence to support a finding that the parties intended and understood the meals and lodging provided to [the plaintiff] as compensation

Defendants argue in opposition that the lodging was not "customarily furnished" to Plaintiff or any other employees, but rather was offered as part of an express agreement between the Hotel and Balczyrak-Lichosyt to credit the cost of the hotel room toward overtime. Thus, according to Defendants, that cost need not be included in Plaintiff's regular rate of pay for the purpose of calculating overtime. This assertion lacks merit. Initially, Defendants cite no authority supporting the proposition that the term "customarily furnished" as used in 29 U.S.C. § 203 somehow restricts the protections regarding overtime wages afforded by the FLSA. Rather, the provisions of the FLSA, Department of Labor regulations, and relevant case law described above suggest just the opposite. Perhaps most notably, the FLSA defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee" without any condition that such amounts must be "customarily furnished." 29 U.S.C. § 207. The "customarily furnished" language relied upon by Defendants is found within the FLSA's definition of the term "wage," *see* 29 U.S.C. § 203(m) ("'Wage' paid to any employee includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees."), and is not used in the context of the statute's definition of "regular rate." In addition, 29 C.F.R. § 531.31, which provides that "[t]he reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where

---

for *overtime*[,]" 248 F. Supp. 2d at 233 (emphasis in origina), the court neither cited authority supporting the theory, nor expressly determined, that the cost for meals and lodging would be credited to overtime in the event that such evidence of intent were present.

'customarily' furnished to the employee," restricts the types of costs that an employer may utilize as credits toward minimum wage requirements to *only* those expended on facilities that are customarily furnished, and thus expands rather than restricts employee protections. *See, e.g.*, *Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-cv-3642, 2016 WL 11263668, at *3 (E.D.N.Y. Nov. 23, 2016) ("[A]n employer may deduct money from an employee's wage in the amount of a meal credit's 'reasonable cost' . . . ."), *report and recommendation adopted*, 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017); *Severino v. 436 W. L.L.C.*, No. 13-cv-3096, 2015 WL 12559893, at *4 (S.D.N.Y. Mar. 19, 2015) ("[O]nly customarily furnished facilities may be credited toward wages under 29 U.S.C. § 203(m)[.] . . ." (citing 29 C.F.R. § 531.31)). In this Court's view, then, the term "customarily furnished" as used in the prefatory clause of the DOL regulation pertaining to overtime pay relied upon in *Moon*, 29 C.F.R. § 531.37 ("Where board, lodging, or other facilities are customarily furnished as additions to a cash wage, the reasonable cost of the facilities to the employer must be considered as part of the employee's regular rate of pay."), was included not to limit the applicability of that provision's operative clause in circumstances where facilities are not customarily furnished, but rather to avoid inconsistencies with 29 U.S.C. § 203's and 29 C.F.R. § 531.31's prescriptions concerning the calculation of minimum wages.

In any event, the alleged agreement between Defendants and Plaintiff to exclude the reasonable cost of lodging and the MetroCard from her regular rate of pay and use it as a credit toward overtime contravenes both the language and spirit of the FLSA and is thus void. It is well-settled Supreme Court precedent that private

agreements whereby employees waive provisions of the FLSA governing their wages and hours are unenforceable:

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose[,] standards of minimum wages and maximum hours were provided. . . . No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07, 65 S. Ct. 895, 902 (1945); *see Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 1445 (1981) (explaining that contractually abridging or waiving an individual employee's rights to minimum wage and overtime pay under the FLSA "would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate" (citations and internal quotation marks omitted)); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 468 (E.D.N.Y. 2011) ("It is well-established that parties cannot contract for lesser protections than the FLSA, which sets the lower limit for overtime compensation." (citation omitted)); *see also Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 299 (E.D.N.Y. 2018) ("[T]he FLSA is a 'uniquely protective statute' designed 'to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees.'" (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015))). Similarly, the NYLL provides that, "[a]ny agreement between the

employee, and the employer to work for less than" the wages to which that employee is entitled under the statute "shall be no defense" to a civil action thereunder. N.Y. Lab. Law § 663.

Here, any agreement between Defendants and Balczyrak-Lichosyt to exclude the reasonable cost of lodging and the MetroCard from her regular rate of pay and use it as a credit toward overtime would run counter to both the FLSA's definition of "regular rate"—"all remuneration for employment paid to, or on behalf of, the employee"—and the case law described above. Thus, to the extent that Plaintiff and Defendants did in fact agree to this arrangement, their agreement is void. [4] Consequently, the reasonable costs for lodging and the MetroCard card must be incorporated into Balczyrak-Lichosyt's regular rate of pay and not credited toward overtime. [5] Having determined that Defendants violated 29 U.S.C. § 207(a)(1) by paying Plaintiff for overtime hours at her regular rate of pay and failing to include the value of the hotel room and MetroCard in her regular rate of pay when calculating overtime, the Court grants summary judgment in her favor on Count One of the Complaint.

---

[4] For the same reasons that agreements seeking to circumvent requirements under the FLSA are void, Defendants' assertion that Plaintiff cannot pursue remedies under the statute because she proposed and received the benefits of the alleged agreement is baseless. Indeed, as Balczyrak-Lichosyt points out, any ruling precluding Plaintiff from pursuing her claims under the FLSA would have the effect of enforcing an agreement that this Court deems unlawful.

[5] *Scott v. City of New York*, 592 F. Supp. 2d 475 (S.D.N.Y. 2008)—a case relied upon by Defendants—is inapplicable, as that case involved credits for compensatory time awarded as compensation for contractual overtime and required the court to interpret different provisions of the FLSA.

### 2. NYLL

"The New York Labor Law 'is the state analogue to the federal FLSA.'" *D'Arpa v. Runway Towing Corp.*, No. 12-cv-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)). As a result, because of these similarities, courts approach FLSA and NYLL claims in the same manner. *See, e.g., Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) ("[C]ourts in the Second Circuit have generally applied their analysis of a plaintiff's FLSA claim to a plaintiff's NYLL claim due to the substantial similarity in the provisions."). Accordingly, for the reasons set forth above, the Court finds that Defendants violated the overtime provisions of the NYLL and likewise grants summary judgment in favor of Plaintiff on the Second Count of the Complaint.

### C. Plaintiff's Spread of Hours Claims

Plaintiff also seeks summary judgment on her spread of hours claim under New York's Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs., tit. 12, § 146. Pursuant to this provision, all hotel employees who work a spread of hours of more than ten on a given day are entitled to receive a premium of one additional hour of pay at the basic minimum wage. *See id.* "Spread of hours" is defined by the statute as "the length of the interval between the beginning and end of an employee's workday," including breaks. *Id.* Soniya, as a hotel, is subject to these requirements. *See id.*

Here, it is undisputed that Balczyrak-Lichosyt, at various times during her employment with the Hotel, worked a spread of hours in excess of ten. *See* Pl.'s 56.1 ¶ 51. Further, Mistry testified that he "did not think" that he has ever paid a spread

of hours premium to any Soniya employee. Moser Decl., Ex. 7, 94:19-21. Defendants'

reliance on N.Y. Comp. Codes R. & Regs., tit. 12, § 142 to assert that Plaintiff cannot

collect spread of hours pay because she earned more than minimum wage is

misplaced because Balczyrak-Lichosyt does not allege a violation of that provision.

Moreover, the provision under which Plaintiff does assert her claim, N.Y. Comp.

Codes R. & Regs., tit. 12, § 146, requires spread of hours pay "regardless of a given

employee's regular rate of pay." *See, e.g., Jeong Woo Kim v. 511 E. 5TH St., LLC*, 133

F. Supp. 3d 654, 665 (S.D.N.Y. 2015). Accordingly, Defendants have violated N.Y.

Comp. Codes R. & Regs., tit. 12, § 146 by failing to pay Balczyrak-Lichosyt a spread

of hours premium and summary judgment on the Third Count of Plaintiff's Complaint

is granted.

### D. <u>Plaintiff's Wage Notice and Wage Statement Claims</u>

Finally, Balczyrak-Lichosyt moves for summary judgment on the basis that

Defendants failed to provide wage and hour notices as required by New York's Wage

Theft Prevention Act ("WTPA"). NYLL § 195(1) requires employers to "provide [their]

employees, in writing . . . a notice containing . . . the rate or rates of pay thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other

allowances." N.Y. Lab. Law § 195(1). Further, pursuant to NYLL § 195(3), every

employer shall "furnish each employee with a statement with every payment of wages

. . . ." N.Y. Lab. Law § 195(3).

Here, it is undisputed that Defendants failed to provide Plaintiff with the

required wage notice and that the wage statements furnished were deficient. *See*

Pl.'s 56.1 ¶¶ 49-50. Accordingly, the Court concludes that Defendants have violated

NYLL §§ 195(1) and 195(3) and grants Balczyrak-Lichosyt summary judgment on the Fourth and Fifth Counts of the Complaint.

### E. **Damages**

Having found liability on Counts One through Five of the Complaint, the Court turns to the question of damages. Balczyrak-Lichosyt requests a total of $497,260.70 in damages, comprised of: (i) $204,638.47 in overtime owed; (ii) $204,620.47 in liquidated damages; (iii) $4,816.50 for spread of hours premium violations; (iv) $4,773.00 for spread of hours liquidated damages; (v) $9,800.00 for wage notice and wage statement violations; and (vi) prejudgment interest in the amount of $68,612.28. Defendants do not challenge Plaintiff's calculations *per se*, but rather assert only that the damages requested are inflated because they include the reasonable cost of lodging and the MetroCard in her regular rate of pay. Because this Court holds, as explained above, that such amounts must be included in Balczyrak-Lichosyt's regular rate of pay as a matter of law, Defendants' argument is inapposite.[6] Having no further opposition from Defendants regarding Plaintiff's calculations, the Court awards damages consistent with Balczyrak-Lichosyt's request as set forth herein along with additional prejudgment interest calculated through the date below.

---

[6] Defendants also contend that questions of fact regarding the amount of damages to be awarded preclude summary judgment. This argument, too, is unavailing, because it is undisputed that the time cards produced in discovery accurately reflect the hours worked by Plaintiff, *see* Pl.'s 56.1 ¶ 41, and the Court has concluded as a matter of law that the value of lodging and the MetroCard must be included in Plaintiff's regular rate. Thus, the purported questions of fact raised by Defendants are immaterial.

1. Unpaid Overtime Wages

Plaintiff seeks an award of $204,638.47 in unpaid overtime. The FLSA requires that employees receive one and one-half times the regular rate for each hour worked over forty hours in any given workweek. 29 U.S.C. § 207(a)(1). The NYLL incorporates the FLSA requirements, such that the analysis of overtime claims under both statutes is generally the same. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate"). Though Plaintiff is permitted to recover for Defendants' overtime violations under both the FLSA and NYLL, the Court may award only one set of compensatory damages. *See Jin M. Cao v. Wi Liang Lexington Rest., Inc.*, No. 08-cv-3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) ("Although plaintiffs are entitled to recover unpaid . . overtime pay under both the FLSA and the Labor Law, they may not recover twice.").

Here, Defendants do not contest that the Hotel paid Balczyrak-Lichosyt her regular rate in cash for all overtime hours owed and that the records produced in discovery accurately reflect all hours worked by Plaintiff. *See* Pl.'s 56.1 ¶¶ 30, 41; *see also* Declaration of Paola Dominguez in Support of Motion for Summary Judgment ("Dominguez Decl."), DE [32], Ex 1. It is further undisputed that the value of the lodging furnished to Balczyrak-Lichosyt was $875.00 per week and that Plaintiff received $100.00 in cash monthly for the MetroCard. *See id.* ¶¶ 44, 45. Balczyrak-Lichosyt received wages at rates of $8.00 per hour from March 13, 2009 through October 1, 2010, $9.00 per hour from October 1, 2010 through May 9, 2014, and $9.50 per hour from May 9, 2014 through April 18, 2015. *See* Pl.'s 56.1 ¶ 5. As set forth in

20

the Overtime and Spread of Hours Calculations Spreadsheet (the "Hours Spreadsheet")—which accurately states Plaintiff's hours worked based on her time cards, *see* Dominguez Decl. ¶ 6—and the Summary of Damages, both submitted by Balczyrak-Lichosyt in support of the instant motion, the total unpaid overtime from March 13, 2009 through April 18, 2015 is $204,638.47. *See id.*, Exs. 3, 4. This amount is calculated by: (i) adding the cost of lodging and the MetroCard together to determine total additional weekly compensation not included in Plaintiff's regular rate; (ii) dividing the additional weekly compensation by 40 to determine the additional hourly compensation to be included in Balczyrak-Lichosyt's regular rate; (iii) adding the additional hourly compensation to Plaintiff's regular rate to determine the "True Regular Rate"; (iv) multiplying the True Regular Rate by 1.5 to determine the "True Overtime Rate"; (v) deducting the actual overtime rate paid from the True Overtime Rate to determine the overtime premium per hour owed; and (vi) multiplying the overtime premium per hour owed by the number of overtime hours worked in each workweek to determine the total overtime wages owed. *See id.* ¶ 9(a)-(f), Ex. 3. The Court has reviewed and approves of the calculations set forth in the Hours Spreadsheet. Accordingly, the Court awards Plaintiff $204,638.47 in unpaid overtime.[7]

---

[7] Contrary to Defendants' contention, the two- or three-year statute of limitations for violations of the FLSA does not limit Plaintiff's damages, because the statute of limitations under the NYLL is six years, *see* NYLL § 198(3), and in wage cases involving claims under federal and state law, "the law providing for the greatest recovery will govern the calculation of damages," *Wicaksono v. XYZ 48 Corp.*, No. 10-cv-3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).

2. Statutory Damages under the WTPA

Next, Plaintiff requests $9,800.00 in statutory damages under the WTPA. Between April 9, 2011 and February 26, 2015, the WTPA entitled employees who did not receive proper wage notices to statutory damages of $50.00 per week to a maximum of $2,500.00. *See Miguel v. Mi Bella Puebla Corp.*, No. 16-cv-1593, 2017 WL 4838820, at \*6 (E.D.N.Y. Sept. 6, 2017), *report and recommendation adopted*, 2017 WL 4838761 (E.D.N.Y. Oct. 24, 2017). Beginning on February 27, 2015, statutory damages under the WTPA were increased to $50.00 per day to a maximum of $5,000.00. *Id.* (citing NYLL § 198(1-b)). Similarly, prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100.00 per work week, not to exceed $2,500.00. *See Miguel*, 2017 WL 4838820, at \*6. For any date on and after February 27, 2015, the WPTA entitles Balczyrak-Lichosyt to $250.00 for each work day that the violation occurred, not to exceed $5,000.00. *See id.* (citing N.Y. Lab. Law § 198(1-d)).

Here, as a result of Defendants' wage notice violation, Plaintiff is entitled to $4,800.00 in statutory damages, comprised of the maximum amount of $2,500.00 for the period between April 9, 2011 and February 26, 2015, and an additional $2,300.00 for the additional 46 days she worked on and after February 27, 2015. *See* Dominguez Decl. ¶ 11(d). Moreover, Balczyrak-Lichosyt is entitled to an additional $5,000.00 in statutory damages due to Defendants' wage statement violations. *See id.* ¶ 11(e). Plaintiff was employed by the Hotel for more than 25 weeks, and is therefore entitled to the maximum amount of $2,500.00 in statutory damages for this period. *See id.* Further, given that Balczyrak-Lichosyt worked in excess of ten days after February

27, 2015, she is entitled to an additional $2,500.00 in statutory damages. *See id.* Accordingly, the Court awards Plaintiff a total of $9,800.00 in statutory damages under the WTPA.

### 3. Spread of Hours

Plaintiff further seeks spread of hours pay in the amount of $4,816.50. As discussed above, Balczyrak-Lichosyt is entitled to receive a premium of one additional hour of pay at the basic minimum wage for each day on which she worked a spread of hours in excess of ten. *See* N.Y. Comp. Codes R. & Regs., tit. 12, § 146. The total spread of hours pay owed to Plaintiff is calculated by multiplying the spread of hours days per week by the applicable minimum wage at the time, for a total of $4,816.50. *See* Dominguez Decl. ¶ 10, Ex. 3. Thus, the Court awards Balczyrak-Lichosyt a total of $4,816.50 in damages for spread of hours premiums.

### 4. Liquidated Damages

In addition, Plaintiff requests liquidated damages totaling $209,411.47. Balczyrak-Lichosyt is not entitled to liquidated damages under both the FLSA and NYLL. *Chowdhury v. Hamza Express Food Corp.*, 666 Fed.Appx. 59, 60-61 (2d Cir. 2016). Instead, "[c]ourts should award damages under the statute that provides for the greater recovery." *Leon v. Zita Chen*, 16-cv-480, 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (citation omitted). Under the FLSA, liquidated damages are awardable in an amount equal to the unpaid overtime and minimum wage compensation "unless the employer can show that it acted in good faith." *Valdez v. H & S Rest. Operations, Inc.*, No. 14-cv-4701, 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016) (quoting 29 U.S.C. § 216(b), *report and recommendation adopted*, 2016 WL

3087053 (E.D.N.Y. May 27, 2016).  To establish good faith, the employer must show that it "had reasonable grounds for believing that it was not a violation of the FLSA . . . ." *Ahmed v. Subzi Mandi, Inc.*, No. 13-cv-3353, 2014 WL 4101224, at *6 (E.D.N.Y. May 27, 2014) (alteration omitted), *report and recommendation adopted*, 2014 WL 4101247 (E.D.N.Y. Aug. 18, 2014).  Under the NYLL, calculation of liquidated damages will vary depending upon the timeframe of the violations.  For claims that "occurred on or before April 8, 2011, NYLL liquidated damages [are] equal to twenty-five percent of the total amount of wages . . . found due." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-cv-3314, 2015 WL 5561033, at *13 (E.D.N.Y. Sept. 1, 2015) (quotation omitted), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).  "For all NYLL claims that occurred on or after April 9, 2011, the employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due" in the same manner as would be awarded under the FLSA.  *See id.* (citing N.Y. Lab. Law. § 663(1)).

Here, Plaintiff calculates liquidated damages as 25% of the overtime and spread of hours pay owed prior to April 9, 2011 and 100% of overtime and spread of hours pay owed thereafter. *See* Dominguez Decl. ¶ 11(b).  Based upon these calculations, liquidated damages amounts to $204,638.47 on Balczyrak-Lichosyt's overtime claims and $4,773.00 on her spread of hours claim.  *See id.* ¶ 12(b), (d). Further, the Court concludes that no good-faith defense to an award liquidated damages is available to Defendants due to Mistry's admission that he understood the applicable wage laws but nevertheless willingly violated them.  *See* Moser Decl., Ex.

7, 112:10-17, 114:11-115:5. Accordingly, the Court awards Plaintiff a total of $209,411.47 in liquidated damages.

### 5. Prejudgment Interest

Finally, Plaintiff seeks prejudgment interest in the amount of $68,612.28. Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc.*, Inc., 12-cv-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and prejudgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015). Under New York law, "[i]nterest shall be at the rate of nine per centum per annum." N.Y. C.P.L.R. § 5004. Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-cv-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013). Courts have discretion in choosing a reasonable date from which to calculate prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. [C.P.L.R.] § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest . . . ." (quotation omitted)). A common date utilized is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ." *Gunawan*, 897 F. Supp. 2d at 93. Here, the Court agrees with Plaintiff that the earliest ascertainable date on which a cause of action existed was the time that Balczyrak-Lichosyt began working significant overtime on June 9, 2011. *See* Pl.'s 56.1 ¶ 4; Dominguez Decl. ¶ 11(f). Because Plaintiff commenced this action on August 16, 2016, Balczyrak-Lichosyt utilized the median

date, January 11, 2014, for the purposes of her calculations. *See* Dominguez Decl. ¶ 11(f). The Court finds this intermediate date reasonable. Applying a nine-percent interest rate to the total overtime and spread of hours pay owed, $209,455.00, Plaintiff correctly calculates the amount of prejudgment interest due through September 1, 2017 to be $68,612.28. *See id.* ¶ 11(f), 12(g). Since that date, additional interest in the amount of $20,298.45 has accrued ($51.65 *per diem* rate x 393 days). Accordingly, the Court awards Balczyrak-Lichosyt a total of $88,910.73 in prejudgment interest.

### 6. Attorneys' Fees and Costs

Although Plaintiff does need seek an award of attorneys' fees and costs through the instant motion, the Court grants her leave to move for such an award within 30 days of the date below. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).

### 7. Automatic Increase for Failure to Pay

Pursuant to the NYLL:

> Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law § 198(4). In light of the Court's award of damages against Defendants, an order providing for an automatic increase in accordance with § 198(4) is warranted. Accordingly, if any amounts remain unpaid within 90 days after expiration of the time to appeal, and no appeal is then pending, the total amount of judgment shall automatically increase by fifteen percent.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's motion is granted in its entirety. Specifically, the Court awards Plaintiff a total of $517,559.17 in damages, comprised of:  (i) $204,638.47 in overtime owed; (ii) $204,620.47 in liquidated damages; (iii) $4,816.50 for spread of hours premium violations; (iv) $4,773.00 for spread of hours liquidated damages; (v) $9,800.00 for wage notice and wage statement violations; and (vi) $88,910.73 in prejudgment interest.  Further, the Court grants Plaintiff leave to file a motion for attorneys' fees and costs within 30 days of the date below.  Finally, in accordance with Plaintiff's unopposed request, Count Six of the Complaint is dismissed with prejudice.


Dated: Central Islip, New York
   September 28, 2018       **SO ORDERED**

               _ s/ Steven I. Locke_
               STEVEN I. LOCKE
               United States Magistrate Judge